# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| SALLY SHUTT, | ) | CASE NO. 8:13CV309 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 47) submitted by Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). For the reasons discussed below, the Motion will be granted.

## FACTS

Plaintiff Sally Shutt ("Shutt") agrees that the following facts presented in Wal-Mart's Brief (Filing No. 49) in support of its Motion are true. (*See* Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, Filing No. 57 at 1.)

On September 5, 2009, Shutt shopped at a Wal-Mart Store located at 6304 N. 99th Street, Omaha, Nebraska (the "Store"). Shutt and her mother, who had dementia, entered the Store and decided to part ways, shop separately, and meet at a bench near the Store's entrance. Shutt completed her shopping and returned to the bench, but her mother was not there. Shutt asked the Wal-Mart greeter near the entrance, Carrothers Hardin ("Hardin"), if he had seen a little gray-haired lady with a cane. Hardin replied he had not. As Shutt talked with Hardin, she stood to the front left side of the greeter's podium, and Hardin stood or sat behind the podium. Shutt decided to take her groceries to her car and asked Hardin to watch for her mother and tell her that Shutt would be right back. Shutt placed her groceries in her car and returned to the Store, but her mother still had not

returned to the bench. Shutt asked Hardin, who was then straightening carts in a vestibule just outside the entrance, if he had seen her mother. Hardin and Shutt then re-entered the Store and stood within a few feet of the front of the podium, talking about Shutt's mother. Shutt scanned the Store; spotted her mother; took a step in her direction; slipped on a child-size clear plastic hanger; fell near the podium; and landed on her buttocks and back. Some women approached Shutt, and Shutt saw one of them pick up the hanger and throw it behind the podium into a receptacle. That was the first time Shutt saw the hanger. Shutt rolled onto her hands and knees to stand up. Hardin asked Shutt if she would like to make a report about her fall. Shutt declined and said she would see how she felt the next day.

Shutt does not know how the hanger came to be on the floor, nor does she know how long the hanger was there before she stepped on it. She contends, however, that a video surveillance recording demonstrates that no Wal-Mart employee checked the floor for hazards during the eleven-minute time period before her fall. (Plaintiff's Brief, Filing No. 57 at 2.) The video recording (Filing No. 58, Ex. 2)[1] shows the Store's entry and exit area from a vantage point behind the greeter's podium. During the eleven-minute period before Shutt's fall, the floor of the Store's entry and exit area appears clean and clear of any debris, as customers continually enter and exit the Store. The greeter and at least one other Wal-Mart employee are shown in the area of the greeter's podium during the video. The area immediately in front of the greeter's podium, where Shutt slipped and fell, is not visible in the video, nor is it possible to see the hanger in the video before Shutt's fall.

---

[1] Wal-Mart argues in its Reply Brief (Filing No. 63 at 2) that the Court should not consider the video because it was not properly authenticated as required by NECivR 7.1(b)(2)©. It does not appear that there is any genuine dispute as to the authenticity of the video, and the Court's consideration of it does not alter the result of the Court's analysis.

Shutt filed her action in the District Court of Douglas County, Nebraska, on September 4, 2013, alleging that Wal-Mart's negligence caused her to suffer injuries. Wal-Mart removed the action to this Court on October 9, 2013, invoking the Court's diversity jurisdiction.[2]

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56©). The Court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir 2011). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56©, except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should

---

[2] Shutt is a resident of South Dakota. Wal-Mart is a Delaware corporation with its principal place of business in Arkansas. (Notice of Removal, Filing No. 1 at 2.)

proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.) (quoting *Matsushita*, 475 U.S. at 586-87)), *cert. denied,* 132 S. Ct. 513 (2011). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**DISCUSSION**

The Nebraska Supreme Court has held:

> A possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the defendant should have expected that a lawful visitor such as the plaintiff

4

either (a) would not discover or realize the danger, or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.

*Herrera v. Fleming Companies, Inc.*, 655 N.W.2d 378, 382 (Neb. 2003) (citing *Derr v. Columbus Convention Ctr.*, 604 N.W.2d 414 (Neb. 2000); *Chelberg v. Guitars & Cadillacs*, 572 N.W.2d 356 (Neb. 1998)).

With respect to the first element of her cause of action, Shutt has no evidence that Wal-Mart's agents or employees *caused* the hanger to be on the floor, or *knew* it was there before Shutt slipped on it. It is her position that Wal-Mart's agents or employees would have discovered the hanger if they had exercised reasonable care. Her only evidence in support of that proposition is the surveillance video. Shutt suggests that the video demonstrates that no Wal-Mart employees looked at the floor area in front of the greeter's podium, checking for foreign objects, within eleven minutes before Shutt's fall.

"[T]o constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it[.]" *Richardson v. Ames Ave. Corp.*, 525 N.W.2d 212, 216 (Neb. 1995) (internal quotation marks omitted) (quoting *Benware v. Big V Supermarkets, Inc.,* 117 A.D.2d 846, 847 (N.Y. App. Div. 1991)). "Thus, although a storekeeper has a duty to use due care to keep the premises reasonably safe for use of an invitee, a storekeeper is not an insurer of the safety of customers patronizing the place of business." *Id*. (citing *Bahe v. Safeway Stores, Inc.*, 182 N.W.2d 202 (Neb. 1970); *Lund v. Mangelson*, 158 N.W.2d 223 (Neb. 1968)).

5

In *Richardson*, the Nebraska Supreme Court noted that it had affirmed a jury verdict in favor of a plaintiff where a hazard existed for at least two weeks, *id.* (citing *Taylor v. J.M. McDonald Co.*, 56 N.W.2d 610 (Neb. 1953), but concluded that no jury properly could find in favor of a plaintiff under a theory of constructive notice where the defendant's floor was cleaned not more than three hours and thirty minutes before the accident and inspected again not more than one hour and fifty minutes before the accident, unless the plaintiff presented other evidence of the negligence on the part of the defendant, such as inadequate staffing. *Id*. at 217–18.

Viewing all evidence in a light most favorable to Shutt, she has not presented any evidence from which a rational trier of fact could conclude that Wal-Mart had constructive notice of the hazard that led to her alleged injuries. The video on which she relies shows that Wal-Mart customers were entering and exiting the Store in a constant flow during the eleven minutes before Shutt's fall. The hanger on which Shutt slipped could have been dropped by another customer within minutes or even seconds before her fall. There is no evidence that the hazard posed by the hanger was visible, apparent, and in existence for a sufficient length of time prior to the accident to permit Wal-Mart's employees to discover and remedy it

## CONCLUSION

Because there is no genuine issue as to any material fact, and the record as a whole could not lead a reasonable jury to find in favor of Shutt, Wal-Mart's Motion for Summary Judgment will be granted and Shutt's Complaint will be dismissed, with prejudice. Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment (Filing No. 47) submitted by Defendant Wal-Mart Stores, Inc., is granted;

2. Plaintiff Sally Shutt's Complaint (Filing No. 1-1) is dismissed, with prejudice;

3. All other pending motions are denied as moot; and

4. A separate Judgment will be entered.


DATED this 31st day of December, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge